**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JASON LONG, | Case No. 1:20-cv-108 |
| Plaintiff, | Black, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Jason Long filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In December 2015, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on November 1, 2013, when he was 34 years old. In his application, Plaintiff alleged disability based upon narcolepsy and a back impairment. (Tr. 167-68, 180). After high school, Plaintiff attended trade school for a year and a half; he worked as an auto mechanic prior to his alleged disability onset date. (Tr. 38). However, Plaintiff has not worked since his disability onset date. (Tr. 20). He remained insured, for purposes of DIB, through December 31, 2018.

Plaintiff's application was denied initially and upon reconsideration, leading him to request an evidentiary hearing.  On June 13, 2018, Plaintiff appeared with counsel and gave testimony before Administrative Law Judge ("ALJ") William Diggs; a vocational expert also testified.  (Tr. 32-56).  Plaintiff testified that he lives with his wife and four children, ages 6-13, for whom he is the primary caregiver.  Plaintiff remained in the "younger individual" age category at the time of the ALJ's December 3, 2018 decision.  (*See* Tr. 25).  In that adverse decision, the ALJ determined that Plaintiff has the following severe impairments:  fibromyalgia, narcolepsy without cataplexy, and spine disorders.  (Tr. 20).  Plaintiff does not dispute the ALJ's determination that none of his impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability.

The ALJ determined that despite the fact that he can no longer work as an auto mechanic, Plaintiff retains the residual functional capacity ("RFC") to perform light work, defined as able to lift/carry up to twenty pounds occasionally and ten pounds frequently, and able to stand and/or walk six hours in a day, and sit six hours in a day, with normal breaks.  (Tr. 21).  However, the ALJ added the following non-exertional limitations:

> The claimant can frequently climb ramps or stairs, but can never climb ladders, ropes, or scaffolds.  He can frequently balance, kneel, crouch and crawl, but can only occasionally stoop.  The claimant could tolerate frequent exposure to extreme cold and vibration.  He must avoid all exposure to work hazards, including dangerous machinery and unprotected heights.

(Tr. 21).  Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative jobs of cashier,

sales attendant, and cafeteria attendant. (Tr. 26). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In his appeal to this Court, Plaintiff argues that the ALJ erred by failing to adequately explain what functional limitations are attributable to Plaintiff's narcolepsy, and/or how that impairment impacts Plaintiff's ability to sustain fulltime work. I find no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial

3

evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

4

### B. Plaintiff's Narcolepsy Claim

Plaintiff argues that the ALJ erred because he "failed to provide any explanation for "how narcolepsy was accounted for within the residual functional capacity." (Doc. 9 at 9). He asserts that "the ALJ failed to translate" the symptoms of narcolepsy "into functional limitations," and failed to explain "how the impairment impacted Mr. Long's ability to sustain work." (*Id*.) Apparently Plaintiff believes that remand is required based upon the ALJ's failure to designate precisely which functional limitations (if any) in Plaintiff's residual functional capacity were attributable to narcolepsy as opposed to other impairments or a combination of impairments. In this respect, Plaintiff fundamentally misapprehends the level of detail required in an ALJ's opinion under the "substantial evidence" standard. There is no legal requirement for an ALJ to provide a reviewing court with the type of specific articulation that Plaintiff seeks. Instead, an ALJ must simply include sufficient detail so that a reviewing court can follow the ALJ's sequential analysis and determine whether substantial evidence exists to support the non-disability determination.[1] Here, the ALJ satisfied that requirement.

The ALJ explained that the state agency physicians had offered opinion evidence as to Plaintiff's residual functional capacity, to which the ALJ gave "good weight" because, despite the less than complete record they had reviewed, the ALJ determined "after a review of additional updated medical evidence there is no support for finding limitation[s] that are more restrictive." (Tr. 25) The agency physicians on whom the ALJ relied stated

---

[1] There is a more specific articulation requirement that applies to the opinions of treating physicians. *See* 20 C.F.R. § 404.1527(c)(2) (setting forth the "good reasons" rule); *Rogers v. Com'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (calling the rule "an additional procedural requirement associated with the treating physician rule"). However, no specific regulation supports the type of "articulation error" that Plaintiff alleges in this case.

5

that "Clmt should avoid hazardous machinery and unprotected heights d/t narcolepsy and possible severe drowsiness with radiculopathy." (Tr. 66, 79). The ALJ adopted that narcolepsy-related limitation.

As the Defendant points out, the mere diagnosis of narcolepsy reflects nothing about the level of functional impairment, if any, during the relevant disability period. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). In fact, it is well established that a "severe" impairment may or may not impact a plaintiff's functional capacity to perform work. *See Griffeth v. Com'r of Soc. Sec.*, 217 Fed. Appx. 425, 428 (6th Cir. 2007) (explaining that a finding that an impairment is "severe" at step 2 of the sequential analysis does not preclude a determination at step 4 that the same limitation has "little effect" on the claimant's ability to work); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("There mere diagnosis of arthritis, of course, says nothing about the severity of the condition.").

In *Amos v. Saul*, 2019 WL 6792755 (E.D. Tenn. Dec. 12, 2019), another court within this Circuit rejected a similar claim – that the ALJ failed to describe which (if any) limitations were specifically attributable to narcolepsy.

> Plaintiff maintains that the ALJ did not provide for any limitations on the effects of her sleeping disorder in the RFC determination. However, while the ALJ could have more explicitly tied his discussion of the medical record regarding Plaintiff's narcolepsy to the limitations in the RFC determination, the ALJ limited Plaintiff to no climbing of ladders, ropes, or scaffolds, as well as no concentrated exposure to fumes and other respiratory irritants and all exposure to hazards. *See Bennett v. Colvin*, No. 2:12-0058, 2016 WL 1222432, at *8 (M.D. Tenn. Mar. 28, 2016) ("Defendant correctly notes that the RFC accounts for narcolepsy by stating that Plaintiff should not be exposed to any hazards ... Plaintiff points to no evidence that supports any additional restrictions due to narcolepsy other than her own testimony.").

*Id.*, 2019 WL 6792755, at *7.

Plaintiff suggests that the ALJ should have addressed "whether Mr. Long's narcolepsy would create a need for additional breaks, or a need for additional rest periods in between …activities, or whether [Plaintiff] could be a danger to himself [or] others due to his extreme issues in dealing with fatigue." (Doc. 9 at 11).  Plaintiff speculates that the effects of narcolepsy "*could be* increased fatigue that *could lead* to needing extra breaks or decreased concentration when at work." (Doc. 9 at 12) (emphasis added).  However, it was Plaintiff's burden to produce medical evidence to show how his narcolepsy impairment impacts his functioning during the relevant disability period.  See 20 C.F.R. § 404.1512(c).  Plaintiff did not offer any other opinion evidence, and the ALJ reasonably adopted the RFC opinions of the agency physicians who opined only that Plaintiff should avoid hazards.  Many claimants with narcolepsy (even narcolepsy *with* cataplexy)[2] remain able to work full-time and therefore are found not to be disabled in decisions routinely affirmed by courts in this Circuit. *See*, *e.g.*, *Moody v. Com'r*, 2019 WL 3797968 (S.D. Ohio Aug. 13, 2019) (narcolepsy with cataplexy), R&R adopted at 2019 WL 4385801 (Sept. 15, 2019); *Amos v. Saul*, 2019 WL 6792755; *Reeves v. Berryhill*, 2018 WL 5923708 (N.D. Ohio Nov. 13, 2018) (narcolepsy with cataplexy); *White v. Com'r*, 2015 WL 1197818 (S.D. Ohio Mar. 16, 2015 (narcolepsy with cataplexy).  Here, the ALJ was not required to include rest periods or other narcolepsy-related limitations because Plaintiff presented no evidence that he required such functional limitations.

---

[2] Individuals diagnosed with narcolepsy without cataplexy "usually…have less severe symptoms and have normal levels of the brain hormone hypocretin" than those diagnosed with narcolepsy with cataplexy.  See https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Narcolepsy-Fact-Sheet, "types of narcolepsy" accessed on April 12, 2021.

In support of his contention that the ALJ should have included additional discussion, Plaintiff points to his scores on the Epworth Sleepiness Scale ("ESS"), a <u>subjective</u> report that Plaintiff completed periodically for Dr. Suchoski, his treating physician for narcolepsy.[3] Plaintiff criticizes the ALJ for discussing only three of ten records dating between 2011 and 2017.[4] He complains that "the ALJ neglects to address narcolepsy without cataplexy to the same extent that it is addressed in the medical records." (Doc. 9 at 12). However, it is well established that an ALJ is not required to discuss each and every medical record. *See* 20 C.F.R. § 404.953; *Bailey v. Commissioner of Social Sec.*, 413 Fed. Appx. 853, 855, 2011 WL 850334, at *2 (6th Cir. 2011).

Here, the ALJ appropriately discussed Plaintiff's treatment records for narcolepsy as a whole, and explained why those records did "not support his allegations of debilitating impairment." (Tr. 22). For example, "[t]he claimant acknowledged that his sleepiness was improved with medication and noted that he took 'drug holidays' on weekends." (*Id.; see also* Tr. 428). During a May 2014 visit, Plaintiff "requested a change in his prescription for Xyrem" on grounds that the side effects impacted his primary caregiving responsibilities for his four children, two of whom have special needs.[5] (*Id.*) In May 2014 and again in February 2015, his self-reported ESS scores were indicative of "only

---

[3] Plaintiff cites to https://www.uofmhealth.org/conditions-treatments/epworth-sleepiness-scale, accessed on April 14, 2021, which states: "The Epworth Sleepiness Scale is widely used in the field of sleep medicine as a subjective measure of a patient's sleepiness."
[4] Although Plaintiff cites to records of his ESS scores on July 6, 2011 and on January 31, 2013, he does not explain the relevance of such records, considering he alleges no disability prior to November 2013. In fact, the larger volume of narcolepsy records pertain to the pre-disability period. (Compare Tr. 292-339 (dating prior to Plaintiff's alleged disability onset) with Tr. 258-292).
[5] Plaintiff testified that two of the children receive disability benefits for autism. (Tr. 39).

8

moderate daytime sleepiness." (*Id*)  In May 2015, Plaintiff reported "doing well" on his medication despite some nausea, and notwithstanding an ESS score suggesting "severe" daytime sleepiness. (*Id*.)  By August 2015, Plaintiff again reported only moderate daytime sleepiness on the ESS. (*Id*.)  While Plaintiff continued to report that he was unable to work due to narcolepsy, those reports were at odds with other reports that he was able to function with medication. (*Id*.; *see also* Tr. 48, testifying that he feels more "focused" on medication).  In September 2017, he requested stimulant medication to help him stay awake during the day at a time when, in addition to caring for his four children, he was caring for his sick wife. (*Id*.)

At the hearing, Plaintiff testified that he has suffered from sleepiness his whole life, including during periods when he was working full-time.[6] (Tr. 47).  Summing up the evidence of record, the ALJ explained that "the record reflects an overall treatment course disproportionate to the alleged severity of the claimant's impairments," including but not limited to narcolepsy, which Plaintiff's primary care physician described as "stable" on medication even with Plaintiff's "drug holidays." (Tr. 24; *see also* Tr. 641).  The ALJ also considered Plaintiff's daily activities, which included mowing the grass, shopping, and working on cars occasionally as a hobby, even though he reported that repairs on cars took him much longer than in the past. (Tr. 24).  *See Moody v. Com'r*, 2019 WL 3797968 (parent's ability to care for her children as well as other daily activities considered in the evaluation of her narcolepsy).

---

[6] Plaintiff testified in response to the ALJ's specific inquiries about limiting effects that his narcolepsy makes it harder for him to be on time for morning appointments.  In response to whether it had any impact when he was still working, he testified that even though he was sometimes 10 to 15 minutes late, the impact was not so great that he would be formally disciplined: "I wouldn't say in trouble but talked too quite a bit of times to be on time." (Tr. 47).

9

The RFC fashioned by the ALJ from the record is substantially supported by the record as a whole, and is not contradicted by any opinion evidence or other evidence that would support any greater limitations. The ALJ used the RFC as determined to elicit testimony from a vocational expert. Because all relevant limitations were included in the hypothetical posed to the vocational expert, his testimony itself provides substantial evidence to support the ALJ's decision. *Howard v. Com'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). In short, the undersigned finds that the ALJ's decision in this case falls easily within the "zone of choice" and should be affirmed.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                          <u>/s Stephanie K. Bowman</u>
                                          Stephanie K. Bowman
                                          United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JASON LONG,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:20-cv-108

Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).